IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  07-cv-00229-WYD-MJW

ERIC QUADE,

Plaintiff,

v.

WARDEN KEVIN MILYARD, et al.,

Defendants.

---

**RECOMMENDATION ON
MOTION TO DISMISS (Docket No. 31)**

---

**MICHAEL J. WATANABE
United States Magistrate Judge**

This case is before the undersigned pursuant to an Order of Reference to

Magistrate Judge issued by District Judge Wiley Y. Daniel on April 18, 2007.  (Docket

No. 14).

The operative pleading is the Amended Prisoner Complaint (Docket No. 9)[1]

which is brought pursuant to 42 U.S.C. § 1983.  In that pleading, plaintiff alleges that on

two occasions (on May 18 and August 1, 2006) at Sterling Correctional Facility ("SCF"),

defendants conducted mass body cavity searches on him and other inmates in public in

violation of his constitutional rights, namely, the Fourth, Eighth, and Fourteenth

Amendments.

---

[1]Although the pro se incarcerated plaintiff has captioned that pleading as "CLASS
ACTION PRISONER COMPLAINT (Amended)," a class has not been certified in this
action.  See Fed. R. Civ. P. 23.

With respect to the first search, plaintiff alleges the following.  At approximately 12:25 a.m. he was awakened in his cell by officers Canfield and Larson who slammed the door open and began yelling for plaintiff to "get dressed only in your boxers, T-shirt, and boots."  Plaintiff claims this "disturbance was shocking and sudden."  (Docket No. 9 at 5, ¶ 2).  Those officers then took plaintiff and several other inmates into the gym and then into the music room where they were all ordered as a group to undergo a body cavity search before security cameras (which were recording) and several witnesses, including female staff.  Major Lloyd Waide ordered that search, claiming it was because facility staff had received reports of some inmates "bull dogging" (described as a form of verbal intimidation) others.  Plaintiff asserts the search was unnecessary because it served no legitimate penological purpose.  In addition, he claims the search was abusive in the manner in which it was conducted.  He claims there was an easy, accessible alternative, namely, conducting the searches in the privacy of their cells, which was well-known to the officers involved.

With regard  to the second search, plaintiff asserts the following.  At approximately 2:00 p.m. on August 2, 2006, for approximately two hours, plaintiff and approximately 500 other inmates were escorted into a gym by members of the Special Emergency Response Team where the inmates were subjected to body cavity searches, ten inmates at a time, in front of dozens of officers and over 500 inmates (some of whom were sex offenders and homosexuals) while being recorded by security video cameras.  Plaintiff was required to sit naked on a gym floor and face forward, where he had to observe the cavity searches.  Inmates who complained were ordered to "shut up" and remain facing the naked men.  When the search was completed, plaintiff was required to walk naked to

the center of the gym and retrieve his clothing. Plaintiff contends the searches were invasive, abusive, and served no legitimate penological interest and that there were many alternatives, such as searches in the relative privacy of the inmates' cells or in a more private area of the gym.

Plaintiff contends that both searches were maliciously conducted for the express purpose of punishment and humiliation and were cruel, unusual, and unnecessary. He also asserts that the manner of the searches was shocking and aggressive. Though he did not sustain physical injury, he claims he did suffer mentally, emotionally, and sexually. (Docket No. 9 at 13). He seeks monetary[2] and injunctive[3] relief.

Now before the court for a report and recommendation is a Motion to Dismiss which was filed by defendants Kevin Milyard, Lloyd Waide, and Aristedes Zavaras (the Executive Director of the Colorado Department of Corrections ["CDOC"]) pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) for lack of subject matter jurisdiction and for failure to state a claim upon which relief may be granted. Defendants seek dismissal on the following grounds: (1) they are immune from liability in their official capacities; (2) pursuant to the Prison Litigation Reform Act ("PLRA"), plaintiff's claims for damages

---

[2]He seeks "$40,000 for each person harmed by each search." (Docket No. 9 at 15).

[3]More specifically, plaintiff seeks "more specific administrative regulations detailing the rights of inmates during searches, and the manner in which such searches should be conducted. . . [and that] the CDOC and the [SCF] adopt specific policy and guidlines [sic] in the training of its officers that would effectively protect the Rights of inmates during searches. Such policy and guidelines would offer procedures and examples to be followed in the course of searches which would protect inmates from abusive and unreasonable searches." (Docket No. 9 at 15).

should be dismissed because he did not sustain a physical injury; (3) in the alternative, the complaint fails to allege facts which, if proven, show that defendant Zavaras personally participated in the alleged violations; (4) in the alternative, the complaint fails to state an Eighth Amendment claim; and (5) the complaint fails to state a claim for injunctive relief.

The court has reviewed the motion and the plaintiff's response thereto (Docket No. 45) and has considered applicable Federal Rules of Civil Procedure, case law, and statutes, as well as the court's file. The court now being fulling informed makes the following findings, conclusions of law, and recommendation.

Rule 12(b)(1):

empowers a court to dismiss a Complaint for "lack of jurisdiction over the subject matter." Fed. R. Civ. P. 12(b)(1). As courts of limited jurisdiction, federal courts may only adjudicate cases that the Constitution and Congress have granted them authority to hear. *See* U.S. CONST. art. III, § 2; *Morris v. City of Hobart*, 39 F.3d 1105, 1110 (10th Cir. 1994). Statutes conferring jurisdiction on federal courts are to be strictly construed. *See F & S Constr. Co. v. Jensen*, 337 F.2d 160, 161 (10th Cir. 1964). A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere conclusory allegations of jurisdiction." *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971). The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. *See Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974).

Motions to dismiss pursuant to Rule 12(b)(1) may take two forms. First, if a party attacks the facial sufficiency of the complaint, the court must accept the allegations of the complaint as true. *See Holt v. United States*, 46 F.3d 1000, 1002-03 (10th Cir. 1995). Second, if a party attacks the factual assertions regarding subject matter jurisdiction through affidavits and other documents, the court may make its own findings of fact. *See id.* at 1003. A court's consideration of evidence outside the pleadings will not convert the the motion to dismiss to a motion for summary judgment under Rule 56. *See id.*

Cherry Creek Card & Party Shop, Inc. v. Hallmark Marketing Corp., 176 F. Supp.2d

1091, 1094-95 (D. Colo. 2001).

For purposes of a motion to dismiss pursuant to Rule 12(b)(6), the court must accept all well-pled factual allegations in the complaint as true and resolve all reasonable inferences in plaintiff's favor. Morse v. Regents of the Univ. of Colo., 154 F.3d 1124, 1126 (10th Cir. 1998); Seamons v. Snow, 84 F.3d 1226, 1231-32 (10th Cir. 1996). A motion to dismiss pursuant to Rule 12(b)(6) alleges that the complaint fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "A complaint must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) if it does not plead 'enough facts to state a claim to relief that is plausible on its face.'" Cutter v. RailAmerica, Inc., 2008 WL 163016 (D. Colo. Jan. 15, 2008) (quoting Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1974 (2007)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp., 127 S. Ct. at 1974 (citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." Id. "[A] plaintiff must 'nudge [] [his] claims across the line from conceivable to plausible' in order to survive a motion to dismiss. . . . Thus, the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting Bell Atlantic Corp., 127 S. Ct. at 1974).

Since the plaintiff is not an attorney, his pleadings have been construed liberally

and held to a less stringent standard than formal pleadings drafted by lawyers.  See Hall

v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing Haines v. Kerner, 404 U.S. 519,

520-21 (1972)).  Therefore, "if the court can reasonably read the pleadings to state a

claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to

cite proper authority, his confusion of various legal theories, his poor syntax and

sentence construction, or his unfamiliarity with pleading requirements. . . .  At the same

time, . . . it is [not] the proper function of the district court to assume the role of advocate

for the pro se litigant."  Id.

## Official Capacity

Defendants first assert that they are immune from liability in their official

capacities.  The Amended Complaint does not indicate whether the defendants are being

sued in their official and/or individual capacities.  It is well established that "neither a

State nor its officials acting in their official capacities are 'persons' under § 1983," Will v.

Michigan Dept. of State Police, 491 U.S. 58, 71 (1989), and that "the Eleventh

Amendment precludes a federal court from assessing damages against state officials

sued in their official capacities because such suits are in essence suits against the

state."  Hunt v. Bennett, 17 F.3d 1263, 1267 (10th Cir. 1994).  Therefore, to the extent

that the plaintiff's § 1983 claims against the defendants are against defendants in their

official capacities for monetary damages and/or retroactive imposition of injunctive relief,[4]

_____

[4]The court notes that the Supreme Court has further stated that "[o]f course a
state official in his or her official capacity, when sued for injunctive relief, would be a
person under § 1983 because 'official-capacity actions for prospective relief are not
treated as actions against the State.'"  Will v. Michigan Dept. of State Police, 491 U.S. at
71 n.10.  "The Eleventh Amendment does not generally bar actions for prospective
injunctive relief where state officials have violated federal law."  Montez v. Romer, 32 F.

such relief is barred by the Eleventh Amendment.  Therefore, it is recommended that the plaintiff's § 1983 claim for monetary relief from the individual CDOC defendants in their official capacities be dismissed.

**Lack of Physical Injury**

Defendants next assert that pursuant to the Prison Litigation Reform Act ("PLRA"), plaintiff's claims for damages should be dismissed because he did not sustain a physical injury.  Plaintiff admittedly did not sustain a physical injury.  Nevertheless, he claims he did suffer mentally, emotionally, and sexually.  (Docket No. 9 at 13).

Section 1997e(e) provides that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."  42 U.S.C. § 1997e(e).  The Tenth Circuit has held that

> [t]he plain language of the statute does not permit alteration of its clear damages restrictions on the basis of the underlying rights being asserted. The underlying substantive violation . . . should not be divorced from the resulting injury, such as "mental or emotional injury," thus avoiding the clear mandate of § 1997e(e).  The statute limits the remedies available, regardless of the rights asserted, if the only injuries are mental or emotional.

Searles v. VanBebber, 251 F.3d 869, 876 (10th Cir. 2001), cert. denied, 536 U.S. 904 (2002).

In this case, because plaintiff did not allege any physical injury, he would be unable to recover compensatory damages pursuant to 42 U.S.C. § 1997e(e).  See Tribe v. Snipes, 2001 WL 1141317, *1 (6th Cir. Sept. 17, 2001) (Inmate's stress, which

---

Supp.2d 1235, 1241 (D. Colo. 1999).  In Amended Complaint, plaintiff here seeks prospective injunctive relief.

inmate said could cause him to have a heart attack, chest pains, and a cold, numb left arm did not constitute a physical injury for purposes of § 1997e(e)); Pruitt v. Simmons, 1997 WL 689509 (10th Cir. Oct. 23, 1997) (District court did not err by dismissing plaintiff's damages claims based upon prisoner's allegations that defendants caused him extreme fear, stress, and terror.); Todd v. Graves, 217 F. Supp.2d 958, 960  (S.D. Iowa 2002) (Inmate alleged that the stress induced by the defendants' actions elevated his blood pressure to an unspecified level, aggravated his hypertension, and that he now suffered from dizziness, insomnia, and loss of appetite.  The court noted "these are all symptoms typically associated with people suffering stress or mental distress.  Prison itself is a stressful environment.  If the symptoms alleged by [plaintiff] were enough to satisfy the physical injury requirement of 42 U.S.C. § 1997e(e), very few plaintiffs would be barred by the physical injury rule from seeking compensation on claims for emotional distress.  The court has no basis upon which to conclude that result was intended by Congress."); Foster v. Captain, York County Jail, 2002 WL 14425, *2 (D. Me. Jan. 4, 2002) (While inmate complained of poor sleep and an upset stomach, he did not allege that he suffered actual physical injury as a result of the defendant's conduct, and thus the complaint was subject to dismissal pursuant to § 1997e(e)); Turner v. Schultz, 130 F. Supp.2d 1216, 1222-23 (D. Colo. 2001) (Prisoner's claims were barred by § 1997e(e) because he alleged that defendants' actions caused him "severe emotional stress and loss of enjoyment of life," but he did not assert any physical injury connected with the defendants' actions.); Cannon v. Burkybile, 2000 WL 1409852 (N.D. Ill. Sept. 25, 2000) (Inmate's allegations that he suffered headaches, insomnia, stress, and

stomach anxiety did not sufficiently meet the physical injury requirement under §
1997e(e)); McGrath v. Johnson, 67 F. Supp.2d 499 (E.D. Pa. Sept. 24, 1999)
(Inmate's assertion that alleged constitutional violations caused an emotional trauma
which manifested itself by causing a preexisting skin condition to become inflamed
did not satisfy § 1997e(e)), aff'd, 2002 WL 1271713 (3d Cir. May 24, 2002); Cain v.
Commonwealth of Va., 982 F. Supp. 1132, 1135 n.3 (E.D. Va. 1997) (Inmate's
complaints of depression, unbearable headaches causing vision loss and requiring
pain medication, numbness, joint and back pain, black-outs, and stomach cramps
and being subject to public embarrassment and humiliation which increased the pain
and suffering did not constitute physical injury within scope of § 1997e(e)); Pinkston-
Bey v. DeTella, 1997 WL 158343, *3 (N.D. Ill. Mar. 31, 1997) (severe headaches not
physical injury)).

     In his response, plaintiff states that he "seeks $40,000 for each person harmed
by these searches not as compensatory damages, He seeks punitive [sic] damages.
The plaintiff dose [sic] not seek any compensatory damages he only wishes to
prevent such searches from occurring agin.  Which is punitive [sic] damages. . . ."
(Docket No. 45 at 3).

     Even in the absence of a showing of physical injury, § 1997e(e) does not bar
recovery of nominal or punitive damages for a constitutional violation.  Searles, 251 F.3d
at 879, 881.  "[A]n award of nominal damages is mandatory upon a finding of a
constitutional violation . . . ."  Id. at 879.  Furthermore, "as a general rule, punitive
damages may be recovered for constitutional violations without a showing a
compensable injury."  Id. at 880.  To obtain punitive damages under § 1983, plaintiff

must show that defendants' conduct was "'motivated by evil motive or intent, or . . . involve[d] reckless or callous indifference to the federally protected rights of others.'" Id. (quoting Smith v. Wade, 561 U.S. 30, 56 (1983)). Therefore, plaintiff's complaint, to the extent it seeks punitive damages (albeit with respect to any violation of his constitutional rights, not those of other inmates)[5] survives the motion to dismiss.

**Personal Involvement of Defendant Zavaras**

"Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation." Foote v. Spiegel, 118 F.3d 1416, 1423 (10th Cir. 1997). With regard to the liability of supervisors:

> Under § 1983, government officials are not vicariously liable for the misconduct of their subordinates. "[T]here is no concept of strict supervisor liability under § 1983." . . . "This does not mean that a supervisor may not be liable for injuries caused by the conduct of one of his subordinates. It does mean that his liability is not vicarious, that is, without fault on his part."
> . . . .
>
> Supervisors are only liable under § 1983 for their own culpable involvement in the violation of a person's constitutional rights. To establish supervisor liability under § 1983, "it is not enough for a plaintiff merely to show a defendant was in charge of other state actors who actually committed the violation. Instead, . . . the plaintiff must establish 'a deliberate, intentional act by the supervisor to violate constitutional rights.'" . . . In short, the supervisor must be personally "involved in the constitutional violation," and a "sufficient causal connection" must exist between the supervisor and the constitutional violation." . . . .
>
> In order to establish a § 1983 claim against a supervisor for the unconstitutional acts of his subordinates, a plaintiff must first show the supervisor's subordinates violated the constitution. Then, a plaintiff must show an "affirmative link" between the supervisor and the violation, namely

---

[5]Defendants correctly assert that the plaintiff cannot request damages for persons other than himself since he is the only plaintiff in this action and lacks standing to bring claims on behalf of other prisoners. (Docket No. 31 at 6 n.1) (citing Swoboda v. Dubach, 992 F.2d 286, 289 (10th Cir. 1993)).

the active participation or acquiescence of the supervisor in the constitutional violation by the subordinates. . . .  In this context, the supervisor's state of mind is a critical bridge between the conduct of a subordinate and his own behavior.  Because "mere negligence" is not enough to hold a supervisor liable under § 1983, a plaintiff must establish that the supervisor acted knowingly or with "deliberate indifference" that a constitutional violation would occur. . . .

Serna v. Colorado Dept. of Corrections, 455 F.3d 1146, 1151-52 (10th Cir. 2006)

(citations omitted).  Furthermore, even under the liberal pleading standards applied to

pro se litigants, "conclusory allegations without supporting factual averments are

insufficient to state a claim upon which relief can be based."  Hall v. Bellmon, 935 F.2d at

1110.

Defendants assert that the complaint fails to allege facts which, if proven, show

that defendant Zavaras personally participated in or knowingly acquiesced in the alleged

constitutional violations that occurred during the searches at issue.  With regard to

defendant Zavaras's involvement, plaintiff avers in the complaint in relevant part:

The Plaintiff is not privy to the specific procedures followed by the Department of Corrections with a Facility conducts an emergency response or massive search.  However, the Executive Director of CDOC is ultimately responsible for the safe and legal operations of Department Facilities.  See, CRS §17-1-103.  If the Executive Director had knowledge of the specifics of th [sic] above search, then the Director failed to supervise the running of the Facility in a legal and proper manner.  If the Director approved of the manner in which the search was conducted either in written or verbal form, then he is directly responsible for the deprivation of the Plaintiffs 4th Amd. Const. Right by directing and controlling the search in question.

(Docket No. 9 at 8, ¶ 11).

In his response to the motion to dismiss, plaintiff states, "In fact the incident on 8-

1-06 was conducted four days after an inmate death. To excercize [sic] the force used

someone would have to approve justifible [sic] penological intrest [sic].  Defendant

Zavaras in his position is responsible for supervising the actions of the staff conducting searches. The claim against Defendant Zavaras should not be dismissed." (Docket No. 45 at 3-4).

While the plaintiff has not yet plead very specific, detailed facts regarding defendant Zavaras' involvement in the searches at issue, reading the complaint liberally, and under the factual circumstances plead in this case concerning the magnitude of the searches conducted on these two specific occasions, this court finds that the plaintiff has, at least at this early stage of the litigation, plead "enough facts to state a claim to relief that is plausible on its face," so as to withstand a motion to dismiss pursuant to Rule 12(b)(6). <u>Bell Atlantic Corp. v. Twombly</u>, 127 S. Ct. at 1974. Plaintiff should be permitted to ascertain through discovery this defendant's involvement, if any, in the mass searches at issue. To dismiss this defendant at this early stage would most likely preclude plaintiff from subsequently adding this defendant back in as a party, following discovery, due to potential statute of limitations issues. Therefore, it is recommended that the claims against defendant Zavaras not be dismissed at this time.

**<u>Eighth Amendment Claim</u>**

Next, defendants assert that in the alternative, the complaint fails to state an Eighth Amendment claim. Defendants acknowledge that plaintiff has raised Fourth Amendment issues. (See Docket No. 31 at 11-12). Defendants, however, contend that plaintiff has failed to allege any facts concerning the manner in which the searches were conducted, and defendants further assert that while the facts alleged by plaintiff raise privacy issues, they fail to demonstrate whether unnecessary force was used or that he suffered any physical pain. Moreover, they contend that plaintiff's admission that he

suffered no physical injury supports a finding that the searches were not conducted in an abusive fashion or with unnecessary force. Therefore, defendants argue that plaintiff has failed to state an Eighth Amendment claim.

Plaintiff responds that his "claim for Eighth Amement [sic] regarding unnecessary force and abusive fashion. The plaintiff stated that alternate and appropriate mesures [sic] were available. The Defendants are in violation of my Fourth Amendment rights and althogh [sic] no physical injurys [sic] were sustained human rights are still at question here. The Plaintiffs [sic] claims should not be dismissed." (Docket No. 45 at 4).

The Supreme Court has extended the Eighth Amendment beyond punishments that are "physiically barbarous." Rhodes v. Chapman, 452 U.S. 337, 345 (1981). When a punishment is not alleged to be "physically barbarous," there must have been unnecessary and wanton infliction of pain. Id. at 346. The "unnecessary and wanton" standard includes punishments that are "so totally without penological justification" as to result in the "gratuitous infliction of suffering." Gregg v. Georgia, 428 U.S. 153, 183 (1976). When physical abuse is not alleged, the actions must represent more than an ordinary lack of due care for the prisoner's interest or safety. Whitley v. Albers, 475 U.S. 312, 319 (1986). "To be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interests or safety." Id. The Tenth Circuit has ruled that to constitute an Eighth Amendment violation, a strip search must involve abuse or unnecessary force. Levoy v. Mills, 788 F.2d 1437, 1439 (10th Cir. 1986).

Plaintiff's allegations here do not approach the scope of Eighth Amendment protection that the Supreme Court articulated in Rhodes. Rhodes, 452 U.S. at 345.

Plaintiff has not alleged physical abuse, nor has he demonstrated that the strip search was imposed as punishment. Even taking plaintiff's allegations in the light most favorable to him, his Eighth Amendment claim fails to state a claim upon which relief can be granted, and it is thus recommended that such claim be dismissed.

**Claim for Injunctive Relief**

Finally, defendants assert that the complaint fails to state a claim for injunctive relief. More specifically, defendants contend that plaintiff cannot establish that he has a clearly-established right to the injunctive relief he is seeking for the following reasons. First, the CDOC already has adopted administrative regulations regarding strip and body cavity searches. (Defs.' Ex. 4, AR 300-06). Second, plaintiff's complaint purportedly fails to allege what, if any, irreparable harm he will suffer if the injunctive relief he seeks is not granted. Finally, defendants assert that prison officials must retain discretion to conduct mass strip searches if necessary. For these reasons, defendants argue that plaintiff's request for injunctive relief should be dismissed.

In response, the pro se plaintiff "argues that many of the aurthorities cited in motion to dismiss by the defendants deal with summary judgment and mainly cases pased [sic] the discovery period of their cases. If the claims that the Plaintiff has made for injunctive relief or any other claims stated in this case the discovery state [sic] will be able to hash out any discrempiencs [sic]. The Plaintiff asserts that he is a pro-se prison inmate with little access to legal materials." (Docket No. 45 at 4-5).

This court finds that defendants' motion to dismiss the claim for injunctive relief is premature and should be denied. The appropriateness of permanent injunctive relief need not be analyzed by the court unless and until the plaintiff prevails. Roshandel v.

Chertoff, 2008 WL 1969646, *9 (W.D. Wash. May 5, 2008). See Pittsburgh League of Young Voters Educ. Fund. v. Port Authority of Allegheny County, 2007 WL 1007968, *9 (W.D. Pa. Mar. 30, 2007) ("A district court should not dismiss a claim for injunctive relief at this early stage of the proceedings when such relief could prove to be appropriate."); In re K-Dur Antitrust Litigation, 338 F. Supp.2d 517, 550 (D.N.J. 2004) (Where "equitable relief could prove to be an appropriate remedy . . . [t]his Court is loathe at . . . [the motion to dismiss] stage in the proceedings to curtail its broad equity powers to fashion the most complete relief possible. In short, while this Court may ultimately agree with Defendants that claims for injunctive relief are inappropriate, dismissal at this stage of the proceedings would be premature."); Friends of Frederick Seig Grove # 94 v. Sonoma County Water Agency, 124 F. Supp.2d 1161, 1172 (N.D. Cal. 2000) ("While the Court may ultimately agree with the defendants that injunctive relief is inappropriate, it is by no means evident that the Court can reach such a determination on a motion to dismiss. Accordingly, the defendants' motion to dismiss the plaintiff's request for injunctive relief is denied as premature.").

**WHEREFORE,** for the foregoing reasons, it is hereby

**RECOMMENDED** that the Motion to Dismiss (Docket No. 31) be granted in part and denied in part without prejudice. More specifically, it is recommended that the motion be granted to the following extent only: that plaintiff's claim for damages against the defendants in their official capacities, any claim for compensatory damages, and his Eighth Amendment claim be dismissed. It is recommended that the motion be denied in all other respects without prejudice.

**NOTICE:  Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have ten (10) days after service of this recommendation to serve and file written, specific objections to the above recommendation with the District Judge assigned to the case.  The District Judge need not consider frivolous, conclusive, or general objections.  A party's failure to file and serve such written, specific objections waives *de novo* review of the recommendation by the District Judge, <u>Thomas v. Arn</u>, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions.  <u>Makin v. Colorado Dep't of Corrections</u>, 183 F.3d 1205, 1210 (10th Cir. 1999); <u>Talley v. Hesse</u>, 91 F.3d 1411, 1412-13 (10th Cir. 1996).**

Date:  August 5, 2008                                        s/ Michael J. Watanabe
      Denver, Colorado                              Michael J. Watanabe
                                           United States Magistrate Judge